Matthias, J.
The consideration of the claims made by the relator as to the alleged unconstitutionality of Section 1901.06, Revised Code, is necessarily of first importance. Relator contends that the act invades the power of the judiciary and is in violation of Section 32, Article II of the Constitution of Ohio, which provides that “the General Assembly shall grant no divorce, nor exercise any judicial power not herein expressly *197 conferred,” and Section 1, Article IV, which provides that “the judicial power of the state is vested in a Supreme Court, Courts of Appeals, Courts of Common Pleas, Courts of Probate, and such other courts inferior to the Courts of Appeals as may from time to time be established by law.”
This question is not one of first impression in this court. In the case of State, ex rel. Lippincott, v. Metzger et al., Board of Elections, 137 Ohio St., 307, 29 N. E. (2d), 361, claim was made that the General Assembly is without power to fix the qualifications of probate' judges for office and to require as a prerequisite that such judges be admitted to the practice of law or have prior service as a judge.
This court held in the per curiam opinion that “the qualifications for the office of probate judge not having been prescribed by the Constitution, the General Assembly has power to fix and determine the essential qualifications for the office.”'
The Constitution is likewise silent as to the qualifications of municipal judges.
Accordingly, Section 1901.06, Revised Code, is not unconstitutional. *
It is the contention of the relator also that the board of elections is not legally empowered to determine whether a candidate for the office of municipal judge has the statutory qualifications for that office. The respondents allege that their action on the protest was in compliance with the provisions of subdivision (K), Section 3501.11, and Section 3513.262, Revised Code.
Section 3501.11, Revised Code, provides in part as follows:
“Each board of elections shall exercise by a majority vote all powers granted to such board by Title XXXV of the Revised Code, shall perform all the duties imposed by law, and shall:
< Í # * *
“ (K) Review, examine, and certify the sufficiency and validity of petitions and nomination papers* * *.”
Section 3513.262, Revised Code, relates to nominating petitions of independent candidates and provides for the filing of protests and their hearing by the board of elections. This section reads in part as follows:
*198 “Each hoard shall * * * examine and determine the sufficiency of the signatures on the petition papers transmitted to or filed with it, and the validity of the petitions filed with it* * *. All other matters affecting the validity or invalidity of such petition papers shall be determined by the Secretary of State or the board with whom such petition papers were filed.
“Written protests against nominating petitions may be filed by any qualified elector eligible to vote for the candidate whose nominating petition he objects to * * *. Such protests shall be filed with the election officials with whom the nominating petition was filed. Upon the filing of such protest, the election officials with whom it is filed shall promptly fix the time and place for hearing it, and shall forthwith mail notice of the filing of such protest and the time and place for hearing it to the person whose nomination is protested. They shall also forthwith mail notice of the time and place fixed for the hearing to the person who filed the protest. At the time fixed, such election officials shall hear the protest and determine the validity or invalidity of the. petition. Such determination shall be final.” (Emphasis added.) P
This section of the Revised Code became effective on January 1, 1954, and does not contain the words of limitation on the authority of the board of elections provided in other sections applicable to the nominating petitions of party candidates.
Although the record does not contain the nominating petition of relator, no question as to its form is raised.
It is the contention of the relator that the board of elections has authority only to review, examine and certify the sufficiency and validity of petitions and nominating papers and that it is not empowered to determine the professional qualifications of a candidate for judge.
He relies on State, ex rel. Cox, v. Riffle, 132 Ohio St., 546, 9 N. E. (2d), 497, and State, ex rel. Kirk, v. Wheatley, 133 Ohio St., 164, 12 N. E. (2d), 491, which involved the election of county engineers who did not have professional qualifications. Each of those cases was an action in quo warranto, and it is argued by the relator that the question of his qualifications can only be raised in a like action after he has been elected. However, in *199 those eases the question of the eligibility of the candidates to assume the office was not raised until after the election. .
There have been numerous mandamus cases in this court in which writs were sought either to require boards of elections to place the names of candidates on the ballot or to prevent the boards of elections from submitting the names.
For example, in the case of Sullivan v. State, ex rel. O’Connor, 125 Ohio St., 387, 181 N. E., 805, writs of mandamus were sought in the Court of Appeals to require a board of elections to certify as eligible for printing upon the ballot the names of several candidates for the office of Democratic Party committeemen in their respective wards. Protests had been filed with the board of elections, and a hearing was conducted by the board which unanimously found them not to be Democrats and refused them a place on the ballot.
Each of those candidates alleged that the action of the board was arbitrary, illegal and an abuse of discretion.
This court, at page 391, said:
“Through a long line of cases decided by this court it has become the settled principle that elections belong to the political branch of the government, and that therefore they are not per se the subject of judicial cognizance, and they have repeatedly been held to be matters for political regulation. * * *
“* * * It has further been declared repeatedly that notwithstanding the decision of the board is declared to be final, it may nevertheless be reviewed if procured by fraud or curruption, or where there has been a flagrant misinterpretation of a statute, or a clear disregard of legal provisions applicable thereto.”
In the case of State, ex rel. Weller, v. Schirmel et al., Board of Elections, 131 Ohio St., 455, 3 N. E. (2d), 352, the board of elections refused to place the name of the relator on the judicial ballot for the Court of Common Pleas after the relator had filed with the board of elections a petition for nomination prior to an act of the General Assembly which abolished the office of judge for which he was a candidate. The Court of Appeals found that the relator’s name should not be placed on the ballot for an office which had been abolished and denied the writ. This court affirmed that judgment.
*200 In the case of State, ex rel. Anderson, v. Hyde et al., Board of Elections, 140 Ohio St., 339, 44 N. E. (2d), 263, Anderson sought a writ of mandamus to require the board of elections to place his name on the ballot as an independent candidate for judge. A protest was filed against such candidacy, and on a hearing evidence showed that Anderson had delivered to several Republican voters typewritten slips, asking them to write in his name. The board of elections refused to place his name on the ballot on the ground that he had been a candidate for election to the same office at the regular primary.
This court refused to grant the writ, holding that the board of elections had reached its. finding and decision upon evidence of a persuasive character, and that no fraud or abuse of discretion was charged or apparent.
Those decisions clearly establish the authority of a board of elections to have, upon protest, a hearing, take evidence and render a decision on the facts, although the facts are disclosed by testimony not strictly applicable to a technical construction of the nominating petitions. Section 3513.262, Revised Code, giving authority to determine the “validity or invalidity” of the petition of a candidate confers upon the board of elections authority to determine the facts which will disclose whether the candidate may lawfully be elected to the office he seeks.
This is in accord with the general rule, and the following statement in 18 American Jurisprudence, 260, Section 126, aptly discloses the reason for the rule:
“As a general rule, anyone who has the qualifications to fill an office may be a candidate for election to that office. The Legislature may not prescribe qualifications for candidates which are not authorized by the Constitution. On the other hand, one who would be ineligible to hold a public office has no right to be a candidate for election thereto, since his election would be a nullity. ’!
It is apparent, then, that the board of elections has statutory authority to determine whether the relator, if elected, could successfully assume the office he seeks, and that its determination is subject to judicial review only “if procured by fraud *201 or corruption, or where there has been a flagrant misinterpretation of a statute, or a clear disregard of legal provisions applicable thereto.” Sullivan v. State, ex rel. O’Connor, supra.
The third question herein raised is whether the board of elections misinterpreted those sections of the Bevised Code pertaining to the validity of relator’s petition and whether the board disregarded legal provisions applicable thereto in determining that relator had not ‘ ‘ actively engaged in the practice of law as his principal occupation for at least five years.”
As noted above, relator states that his work as a referee was of a judicial nature. . In this state, judges are prohibited by statute from practicing law during their term of office.
Section 4705.01, Bevised Code, provides in part as follows:
“No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which he is not a party concerned, either by using or subscribing his own name, or the name of another person, unless he has been admitted to the bar by order of the Supreme Court in compliance with its prescribed and published rules. Admission to the bar shall entitle such person to practice before any court or administrative tribunal without further qualifications or license.
ÍÍ* # *
“No judge of any court of record in this state shall engage in the practice of law during his term of office, either by appearing in court, by acting as advisory or consulting counsel for attorneys or others, by accepting employment or acting as an attorney, solicitor, collector, or legal advisor for any bank, corporation, or loan or trust company, or by otherwise engaging in the practice of law in this state, in or out of the courts, except as provided in Section 1901.11 of the Bevised Code [the provisions of which are immaterial to this issue].”
Since a Judge of the Cleveland Municipal Court in'the performance of his judicial duties can not, by this statutory definition, be considered as practicing law, then neither can relator’s services, as a referee, in assisting a judge in the performance of judicial duties be considered the practice of law.
We find neither statutory misinterpretation nor a disregard *202 of legal principles in the finding of the board of elections that relator has not “actively engaged in the practice of-law as his principal occupation for at least five years.”
For the reasons stated, the demurrer to the answer is overruled and the writ of mandamus is denied.

Demurrer overruled and writ denied.

Weygandt, C. J., Zimmerman, Stewart, Bell and Taut, JJ., concur.